**UNITED STATES DISTRICT COURT**

**WESTERN DISTRICT OF LOUISIANA**

**LAFAYETTE-OPELOUSAS DIVISION**

| | | |
|---|---|---|
| **MILTON COURVILLE** | * | **CIVIL ACTION NO. 07-1377** |
| **VERSUS** | * | **JUDGE MELANÇON** |
| **COMMISSIONER OF SOCIAL SECURITY** | * | **MAGISTRATE JUDGE HILL** |

**REPORT AND RECOMMENDATION**

This social security appeal was referred to me for review, Report and Recommendation pursuant to this Court's Standing Order of July 8, 1993. Milton Courville, born January 16, 1958, filed applications for a period disability, disability insurance benefits and supplemental security income on January 18, 2005, alleging disability since December 19, 2002, due to a back injury, knee problems, arm and foot pain, and depression.[1]

FINDINGS AND CONCLUSIONS

After a review of the entire administrative record and the briefs filed by the parties, and pursuant to 42 U.S.C. § 405(g), I find that there is not substantial evidence in the record to support the Commissioner's finding that the claimant was not disabled and that this case should be remanded for further proceedings.

---

[1] Claimant had filed a previous application for disability insurance benefits on February 5, 2001, which was denied.

In fulfillment of F.R.Civ.P. 52, I find that this case should be remanded for further proceedings, based on the following:[2]

**(1) Consultative Examination by Dr. Michael J. Leddy, III dated June 1, 2002**. Claimant reported injuring his back one and a half years prior after he fell down the stairs. (Tr. 335). He complained of back and right leg pain. He was able to do some chores around the house, such as washing his clothes. He was able to sit and stand for 30 minutes, dress and undress himself without difficulty, climb stairs, and drive.

Claimant's medications included over-the-counter pain medication and Ultracet. He smoked two packs of cigarettes per day.

On examination, claimant was 73 inches tall and weighed 226 pounds. His blood pressure was 114/88. He ambulated with a slow gait, and was somewhat hunched over.

Cervical spine exam revealed painless full range of motion. Lumbar spine was to 90 degrees of flexion with pain on returning to a neutral position. Lateral bending was to 10 degrees.

---

[2]Although all of the records were reviewed by the undersigned, only those relating to the latest applications for benefits are summarized herein.

Claimant had a negative straight leg raising test. (Tr. 336). He was able to do a heel raise, toe raise, and heel-to-toe walk. He was unable to squat. He rolled to his side to lie on his back.

Upper extremity exam showed 2+ radial pulse with no signs of edema, cyanosis, clubbing, or swelling. Claimant's grip strength was 5/5. He showed no signs of atrophy, and gross and fine manipulation were within normal limits. He had painless full range of motion.

Lower extremity exam showed full range of motion in the hips, knees, and ankles. Claimant had some significant discomfort to his back on range of motion of his hips and knees.

Neurological exam showed no signs of nervousness, good personal hygiene, ability to follow simple directions, and good affect. Motor and sensory exam, and cerebellar, cranial nerve, and deep tendon reflexes were normal.

X-rays showed some degenerative changes at L2-L3, L3-L4, L4-L5, and L5-S1. (Tr. 338). Claimant had an increased lordosis at the lumbosacral level. He had some spondylolysis at L3-L4, L4-L5, and L5-S1. He also had a significant osteophyte, anterior lipping at L3-L4, and some significant degenerative changes and possibility of postoperative changes at L3-L4, L5-S1 at the facet joints.

Dr. Leddy was somewhat concerned that claimant was considering spine surgery because he smoked two packs of cigarettes per day, and provided claimant with literature indicating that smoking enhanced the chance for a pseudoarthrosis. (Tr. 337). Claimant's gait and range of motion appeared within normal limits. He had no signs of spasm. Grip strength, grasping ability, and dexterity were normal.

In the Medical Source Statement of Ability to do Work-Related Activities (Physical), Dr. Leddy found that claimant could occasionally lift 10 pounds, stand/walk less than two hours in an eight-hour workday, and had no limitations as to sitting or pushing/pulling. (Tr. 339-40). He could never climb, crouch, crawl, or stoop, but could occasionally balance and kneel. He had limitations as to vibration, humidity/wetness, and hazards such as machinery and heights. (Tr. 342).

**(2) Records from Michael Basile dated December 11, 2000 to August 6, 2002**. Claimant was seen on May 24, 2002, with complaints of low back pain. (Tr. 346-47). Dr. Basile gave him 30 samples of Ultracet to take as needed for back pain.

On August 6, 2002, claimant complained of problems sleeping. (Tr. 345). Dr. Basile was not sure if it was because of depression or back pain. He prescribed Paxil and Ultracet.

**(3) Consultative Exam by Dr. Tosheiba Holmes dated March 5, 2005**. Claimant complained of back pain radiating to his right buttock, pain radiating to his

4

left arm, depression since his injury four years prior, problems with his knees going out, and soreness in his knees and feet. (Tr. 349). He was previously employed as a truck driver, and was limited from going back to work by his back pain.

Claimant stated that he could feed and dress himself, stand for 30 minutes, walk a half block on level ground, sit for two hours, lift five pounds, and drive for 20 minutes. He did not do any household chores. He was taking Diclofenac twice a day. (Tr. 350). He smoked one pack of cigarettes per day.

On examination, claimant was 73 inches tall and weighed 203 pounds. His blood pressure was 154/88. He ambulated with an antalgic gait, with slight difficulty dressing and undressing himself. He had no problems getting up and out of the chair and on and off of the table.

Claimant had palpable pulses in the extremities. Hand grip strength was 5/5 on the right and 4/5 on the left. Dexterity was intact. He claimant was able to pick up a paperclip from a flat service. He was missing 10 degrees of elbow extension on the left.

Straight leg raising was negative. (Tr. 351). Claimant was able to lay straight back on the table. He was able to elevate on his heels and toes, and squat to the ground.

Motor exam was 5/5 in all muscle groups, except at the left elbow where extension was 4/5. Hand grip and wrist flexion on the left was 4/5. Claimant had mild atrophy of the left calf.

Sensation was decreased to light touch in the bilateral L4-L5 dermatomes. Claimant had no cerebellar findings. Cranial nerves were intact. Deep tendon reflexes were 2+ and symmetrical.

Dr. Holmes' impression was low back pain with some evidence of radiculopathy, and decreased sensation in dermatomal patterns; injury to the left elbow with loss of range of motion, loss of strength, and loss of hand grip strength, with intact dexterity of the hands; a history of knee problems with some loss of range of motion, with no swelling, redness, or effusion, and a history of depression, for which claimant was not currently on any medications.

**(4) Physical Residual Functional Capacity ("RFC") Assessment dated March 30, 2005**. The evaluator determined that claimant could lift 20 pounds occasionally and 10 pounds frequently; stand/walk and sit about six hours in an eight-hour workday, and had unlimited push/pull ability. (Tr. 353). He could perform all postural activities occasionally, except that he could never climb ladders/ropes/scaffolds. (Tr. 354).

**(5) Consultative Orthopedic Examination by Dr. Stephen M. Wilson dated May 23, 2006**. Claimant complained that his back pain was so severe that he was unable to stand or walk any distance. (Tr. 360). He stated that he had to use a cane periodically. He was on strong pain medication, including Lortab and muscle relaxants.

On examination, claimant was 6 feet 3 inches tall and weighed 240 pounds. He smoked half a pack of cigarettes a day. His back had no swelling, inflammation, or muscle spasm. He complained bitterly of pain on minimal palpation.

Claimant was unable to heel or toe walk because he said it hurt too much in his lower back. (Tr. 361). He was unable to forward flex more than 30 degrees without complaining of severe pain in the lower back. All of his symptomatology was "highly exaggerated."

Orthopedic and neurologic examination of the lower extremities revealed no evidence of muscle atrophy or weakness. Claimant had no palpable muscle spasm or joint deformity. Reflexes were present and equal. He had no numbness.

Claimant had good strength on dorsiflexion of the feet and toes. Pulses were palpable and equal. Straight leg raising test was negative. Knee examination showed some pain along the medial and lateral joint lines on deep palpation. He had full range of motion in both knees.

X-rays of the lower back and knees showed no evidence of fracture or dislocation. Alignment of the vertebrae was satisfactory. Claimant had some degenerative changes in the lumbar spine with some anterior spurring at L4-5. X-rays of the knees showed minimal degenerative arthritis in the medial and lateral compartments of the knees.

Dr. Wilson observed that claimant was somewhat hard to evaluate due to his exaggeration of symptomatology. He believed that if claimant were motivated to work, he could orthopedically return to some form of gainful occupation. He limited claimant to lifting no more than 40 pounds or more than 15 pounds on a regular basis; standing and ambulating no more than six hours a day, and only occasional bending, stooping, crawling, or climbing. He recommended that before claimant returned to employment, he needed to be evaluated for "chemical dependency and depression." He noted that claimant also needed to stop smoking and lose weight.

In the Medical Source Statement of Ability to do Work-Related Activities (Physical), Dr. Wilson limited claimant to lifting/carrying 25 pounds occasionally and 10 pounds frequently, and standing/walking about six hours in an eight-hour day. Claimant had no limitations as to sitting and pushing/pulling.

Claimant had occasional postural limitations. He could perform all manipulative functions frequently. (Tr. 365). He had no visual/communicative or

8

environmental limitations. (Tr. 365-66).

**(6) Claimant's Administrative Hearing Testimony**. The record reflects that claimant signed a Waiver of Representation by the Claimant prior to the hearing dated April 5, 2006. (Tr. 235). On that same date, he also signed a Waiver by Claimant to Provisions of Privacy Act of 1974 Pertaining to Evidence Received Subsequent to the Hearing. (Tr. 236).

At the hearing on April 5, 2006, claimant was unrepresented. (Tr. 373). The following colloquy transpired between the ALJ and claimant regarding claimant's right to counsel:

> ALJ: Mr. Courville, we wrote you a letter, told you that you could have a lawyer present.
>
> CLMT: Uh-huh.
>
> ALJ: Not one here. I'd be happy to give you time to get a lawyer if you like.
>
> CLMT: No, I don't want a lawyer.
>
> ALJ: We'll go ahead with it, then.

(Tr. 373-74).

After being sworn, claimant testified that he was 48 years old. (Tr. 374). He was a high-school graduate. He had last worked in November of 2000 as a truck driver. (Tr. 375).

Claimant testified that he had worked as a truck driver for 15 years. He stated that he had quit working because he had been injured on the job. He lived at home with his mother.

Claimant reported that he was taking over-the-counter pain medicine and Lexapro for depression. (Tr. 376). He testified that he stayed in bed for his pain.

As to activities, claimant testified that he washed his own clothes and put out the trash. He stated that he could not get out of the bathtub. (Tr. 377). He drove and grocery shopped twice a month.

Regarding restrictions, claimant reported that he could sit and stand for about 30 minutes to an hour. (Tr. 378). He stated that he could walk about 15 to 20 minutes. He did not bend or squat.

As to complaints, claimant testified that he was depressed. He stated that he was on depression medication. He reported that he was depressed because of his situation in life. (Tr. 379). He said that he cried some times, and had occasional suicidal thoughts.

Claimant also complained of lower back pain on his right side. He stated that his doctor told him that he needed surgery. He reported that the pain went into his right buttocks. He also testified that his left leg bothered him, his feet hurt, and his legs went out on him.

The ALJ stated that he was going to send claimant to an orthopedic doctor and a psychological doctor.

(**7) The ALJ's Findings**. Claimant argues that: (1) the ALJ failed to fully inform him that he had the right to request a supplemental hearing and the right to subpoena the post-hearing examining physician, prior to allowing claimant to waive his right to inspect post-hearing evidence, rendering claimant's waiver ineffective; (2) the ALJ failed to fully and fairly develop the facts regarding claimant's mental impairment of depression. Because I find that both of these arguments have merit, I recommend that this case be **REMANDED** for further proceedings.

Claimant first asserts that there is no on-the-record explanation by the ALJ indicating that claimant was fully informed of, and understood the effects of, the waiver of his right to inspect post-hearing evidence, to subpoena the post-hearing examiner for the purposes of cross-examination, and to present rebuttal or contradictory evidence. [rec. doc. 10, pp. 5-6). It is well established that the ALJ owes a duty to a claimant to develop the record fully and fairly to ensure that his decision is an informed decision based on sufficient facts. *Brock v. Chater*, 84 F.3d 726, 728 (5th Cir. 1996). When a claimant is not represented by counsel, the ALJ owes a heightened duty to "scrupulously and conscientiously probe into, inquire of, and explore for all relevant facts." *Id.*, citing *Kane v. Heckler*, 731 F.2d 1216, 1219

(5th Cir. 1984). However, to merit reversal of the ALJ's decision, a claimant who does not validly waive his right to counsel must prove that he was thereby prejudiced. *Id.*; *Gullett v. Chater*, 973 F.Supp. 614, 621 (E.D. Texas 1997).

The record reflects that the ALJ informed claimant of his right to counsel at the hearing. (Tr. 373-74). After being so advised, claimant agreed to proceed without a representative. However, claimant contends that the ALJ failed to fully inform him that he had the right to inspect, prior to decision, any additional information received by the ALJ post-hearing. (rec. doc. 10, pp. 5-6).

In support of his argument that he was prejudiced, claimant asserts that the ALJ ordered Dr. Wilson's report without advising claimant of his right to request a supplemental hearing and to subpoena post-hearing evidence. (rec. doc. 10, pp. 6-7). He therefore contents that he could not knowingly and intelligently waive his right to request a supplemental hearing, citing HALLEX 1-2-7-35, which provides, in pertinent part, as follows:

> If an ALJ enters posthearing evidence into the record without proffer, the ALJ must ensure that the claimant waived the right to examine the evidence and to appear at a supplemental hearing. The waiver may have been made on-the-record at the hearing or by a signed written statement. Regardless of the form of the waiver, *the ALJ must ensure on-the-record that the claimant (especially a pro se claimant) is fully informed of and understands the effects of the waiver*. If the waiver was by a signed written statement, the ALJ must enter the statement into the record as an exhibit.

(emphasis added).

While HALLEX does not carry the authority of law, the Fifth Circuit has held that "where the rights of individuals are affected, an agency must follow its own procedures, even where the internal procedures are more rigorous than otherwise would be required." *Newton v. Apfel*, 209 F.3d 448, 459 (5th Cir. 2000) (quoting *Hall v. Schweiker*, 660 F.2d 116, 119 (5th Cir. 1981)). The record reflects that the ALJ did not comply with HALLEX since he failed to ensure on the record that the claimant was fully informed of and understood the effects of the waiver. However, the Fifth Circuit requires a showing that the claimant was prejudiced by the agency's failure to follow a particular rule before such failure will be permitted to serve as the basis for relief from an ALJ's decision. *Shave v. Apfel*, 238 F.3d 592, 597 (5th Cir. 2001). Prejudice can be established by showing that additional evidence would have been produced if the ALJ had fully developed the record, and that the additional evidence might have led to a different decision. *Newton,* 209 F.3d at 458.

Here, claimant argues that had he been represented, counsel could adduced new and material evidence that claimant had the non-exertional impairment of depression. [rec. doc. 10, pp. 8-13]. In support of his argument, he attaches the psychological evaluation dated February 26, 2008 of Jerry L. Whiteman, Ph.D., who indicated that claimant had marked impairments as to carrying out detailed instructions, the ability

to make judgments on simple work-related decisions, to interact appropriately with the public, supervisors and co-workers, to respond appropriately to work pressures, and to respond appropriately to changes in a routine work setting. [rec. doc. 10, Exhibit]. Dr. Whiteman diagnosed claimant with bipolar disorder and depression, stating that "[m]edical management and individual therapy are warranted in order to address his physical and psychological issues."

When new evidence becomes available after the Secretary's decision and there is a reasonable possibility that the new evidence would change the outcome of the decision, a remand is appropriate so that this new evidence can be considered. *Ripley v. Chater*, 67 F.3d 552, 555 (5th Cir. 1995). In order to justify a remand, the evidence must be (1) new, (2) material, and (3) good cause must be shown for the failure to incorporate the evidence into the record in a prior proceeding. *Leggett v. Chater*, 67 F.3d 558, 567 (5th Cir. 1995).

Reviewing the materiality of the new evidence requires the court to make two separate inquiries: (1) whether the evidence relates to the time period for which the disability benefits were denied, and (2) whether there is a reasonable probability that this new evidence would change the outcome of the Secretary's decision. *Ripley*, 67 F.3d at 555.

In this case, the evidence submitted, which was dated almost two years after the ALJ's decision, did not relate to the time period for which the disability benefits were denied. Accordingly, remand is not warranted on that basis.

However, the undersigned finds that this case should be remanded because the ALJ did not fully and fairly develop the record regarding claimant's depression. In 2002, claimant reported depressive symptoms to Dr. Basile, for which he prescribed Paxil. (Tr. 345). Dr. Holmes' also noted that claimant had a history of depression. (Tr. 351). At the hearing, the ALJ indicated that he was going to send claimant to an "orthopedic doctor and to a psychological doctor." (Tr. 379). While the orthopedic exam occurred, the psychological evaluation did not.

Most significantly, in Dr. Wilson's post-hearing orthopedic report, he noted that "before [claimant] returns to employment he needs to be evaluated for chemical dependency and depression." (Tr. 361). Despite Dr. Wilson's recommendation and the ALJ's indication that he was going to order a psychological exam, such exam did not occur. Under these circumstances, the undersigned finds that this case should be remanded for further proceedings.

Another critical factor in this case is that claimant was never given the *opportunity* to waive his right to cross-examine and subpoena Dr. Wilson. After

*Richardson v. Perales*, 402 U.S. 389, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971),[3] all of the circuit courts of appeal to consider the issue have ruled that due process requires that a claimant be given the opportunity to cross examine and subpoena individuals who submit reports. *Lidy*, 911 F.2d at 1077; *Kelly v. Chater*, 952 F.Supp. 419, 424 (W.D. Tex. 1996). Further, in *Tanner v. Secretary of Health and Human Services*, 932 F.2d 1110 (5th Cir. 1991), the Fifth Circuit held that a waiver of the right to cross-examination cannot be inferred from the failure to make an express demand for cross-examination. Specifically, in the case of reports received after the close of the administrative hearing, a waiver of the right to cross-examine must be "clearly expressed or strongly implied" from the circumstances. (internal citation omitted). *Id*. at 1113. Clearly, that did not happen here.

In this case, there is no indication that claimant was provided notice of Dr. Wilson's report or was given an opportunity to cross-examine him or provide evidence to rebut his findings prior to the ALJ's decision. Without that opportunity, claimant was not provided due process. Thus, I find that claimant has shown prejudice due to the ALJ's placing of this post-hearing report into the record without

---

[3]*Richardson* held in part that when a claimant has not exercised his right to subpoena the reporting physician and provide him with the opportunity for cross-examination, the report can be received into evidence despite its hearsay character and absence of cross-examination.

16

fully informing the *pro se* claimant of his right to cross-examine the issuer of the report. Additionally, I find that the ALJ failed to fully and fairly develop the record as to claimant's mental impairment.

Accordingly, the undersigned recommends that this case be **REMANDED** to the Commissioner for further administrative action pursuant to the fourth sentence of 42 U.S.C. § 405(g). This includes, but does not limit, sending the case to the hearing level with instructions to the Administrative Law Judge to give claimant an opportunity to confront and cross-examine Dr. Stephen Wilson, or to enable him to obtain a medical opinion from another expert of his choice, and to undergo a consultative psychological examination. Claimant shall be afforded the opportunity to submit additional evidence and to testify at a supplemental hearing.

Inasmuch as the remand recommended herein falls under sentence four of Section 405(g), any judgment entered in connection herewith will be a "final judgment" for purposes of the Equal Access to Justice Act (EAJA). See, *Richard v. Sullivan*, 955 F.2d 354 (5th Cir. 1992) and *Shalala v. Schaefer*, 509 U.S. 292 (1993).

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and F.R.Civ.Proc. 72(b), parties aggrieved by this recommendation have ten (10) business days from service of this Report and Recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within ten (10) days after

being served with a copy thereof. Counsel are directed to furnish a courtesy copy of any objections or responses to the District Judge at the time of filing.

**FAILURE TO FILE WRITTEN OBJECTIONS TO THE PROPOSED FACTUAL FINDINGS AND/OR THE PROPOSED LEGAL CONCLUSIONS REFLECTED IN THIS REPORT AND RECOMMENDATION WITHIN TEN (10) DAYS FOLLOWING THE DATE OF ITS SERVICE, OR WITHIN THE TIME FRAME AUTHORIZED BY FED.R.CIV.P. 6(b), SHALL BAR AN AGGRIEVED PARTY FROM ATTACKING THE FACTUAL FINDINGS OR THE LEGAL CONCLUSIONS ACCEPTED BY THE DISTRICT COURT, EXCEPT UPON GROUNDS OF PLAIN ERROR. *DOUGLASS V. UNITED SERVICES AUTOMOBILE ASSOCIATION*, 79 F.3D 1415 (5TH CIR. 1996).**

Signed January 7, 2009, at Lafayette, Louisiana.

_C. Michael Hill_
C. MICHAEL HILL
UNITED STATES MAGISTRATE JUDGE